**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TASHONA R. D.,

                                        Plaintiff,

            v.

                                                        No. 5:23-CV-00583
COMMISSIONER OF SOCIAL SECURITY,                        (AMN/CFH)


                                        Defendant.
_____


**APPEARANCES:**                          **OF COUNSEL:**
Olinsky Law Group                         HOWARD D. OLINSKY, ESQ.
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration            KATHRYN S. POLLACK, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Tashona R. D.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for a period of disability and disability insurance

benefits.  See Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in
accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. No. 6.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Report-
Recommendation and Order will identify plaintiff's last name by initial only.

and remanded for further proceedings. See Dkt. No. 12. The Commissioner moves for judgment on the pleadings and for the Commissioner's decision to be affirmed. See Dkt. No. 18. For the following reasons, it is recommended that plaintiff's motion be denied, the Commissioner's motion be granted, and the Commissioner's decision be affirmed.

## I. Background

On February 3, 2020, plaintiff filed a Title II application for a period of disability and disability benefits, alleging a disability onset date of June 15, 2018. See T. at 14, 92, 317-23.[3] The Social Security Administration ("SSA") denied plaintiff's claims initially on September 23, 2020, and upon reconsideration on March 26, 2021. See id. at 14, 128-33, 135-40. Plaintiff appealed and requested a hearing, see id. at 141-44, and virtual hearings were held before Administrative Law Judge ("ALJ") Robyn L. Hoffman on November 10, 2021, February 18, 2022, and May 20, 2022. See id. at 37-90. On September 22, 2022, the ALJ issued an unfavorable decision. See id. at 14-29. Plaintiff timely commenced this action on May 15, 2023. See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g),

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 9. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner]

> will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  See id. (citing Berry, 675 F.2d at 467).


### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2024[,]" and she "engaged in substantial gainful activity from the alleged onset date of disability through the fourth quarter of 2019"; "[h]owever, there has been a continuous 12-month period(s) during which [plaintiff] did not engage in substantial gainful activity."  T. at 17-18.  At step two, the ALJ found that plaintiff "ha[d] the following severe impairments: major depressive disorder, generalized anxiety disorder, panic

disorder, and substance abuse disorder." Id. at 18.  At step three, the ALJ determined

that plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  See id. at 19-20.  Before reaching step four, the ALJ concluded

that plaintiff retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the
> following nonexertional limitations: [Plaintiff]  retains the ability
> to: understand and follow simple instructions and directions;
> perform  simple  tasks  independently;  maintain  attention/
> concentration for simple tasks; regularly attend to a routine
> and maintain a schedule; relate to and interact appropriately
> with  all  others  to  the  extent  necessary  to  carry  out  simple
> tasks; can handle simple, repetitive work-related stress in that
> [plaintiff] can make occasional decisions directly related to the
> performance of simple tasks in a position with consistent job
> duties that do not require [plaintiff] to supervise nor manage
> the work of others.

Id. at 20.  At step four, given the lack of testimony from a vocational expert, the ALJ

"elected to use the expedited vocational assessment, as provided under 20 CFR

404.1520(h) and 416.920(h)," and "expedite[d] the issue of whether [plaintiff] can

perform her past relevant work."  Id. at 28.  At step five, the ALJ concluded that

"considering [plaintiff's] age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that

[plaintiff] can perform."  Id.  Thus, the ALJ determined that plaintiff "has not been under

a disability, as defined in the Social Security Act, from June 15, 2018, through the date

of this decision."  Id. at 29.


**IV. Discussion**

**A. The Parties' Arguments**[4]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. See Dkt. No. 12 at 3.  First, plaintiff contends that "[t]he ALJ's mental RFC is not supported by substantial evidence because she failed to account for all limitations assessed in the opinions that she credited or explain their omission."  Id.  Specifically, plaintiff asserts that "the ALJ found [Dr. Grassl's] opinion [to be] 'generally persuasive'"; but "[d]espite accepting these moderate limitations, the ALJ failed to incorporate critical components of Dr. Grassl's opinion, or alternatively failed to explain why such limitations were implicitly rejected."  Id. at 11-12 ("Most notably, the ALJ failed to incorporate any limitation relating to 'sustaining an ordinary routine and regular attendance at work.'").  Second, plaintiff contends that it was improper for the ALJ to rely upon the Medical-Vocational Guidelines at step five "because the ALJ ignored evidence of a significant nonexertional impairment affecting [her] ability to maintain concentration persistence and pace and maintain regular attendance."  Id. at 19. Plaintiff asserts that, "in light of her evidence of significant nonexertional impairment, the ALJ erred by failing to obtain vocational expert testimony."  Id. at 20.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.  See Dkt. No. 18 at 3.  Specifically, the Commissioner contends that: (1) "the ALJ duly considered Dr. Grassl's opinion, and incorporated the moderate limitations assessed by Dr. Grassl into her finding that [p]laintiff was limited to simple, low-stress work that required only occasional decision-making and no supervisory duties"; and (2)

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

the ALJ properly relied upon the Medical-Vocational Guidelines because "[p]laintiff's non-exertional limitations did not significantly impact the full range of unskilled work at all exertional levels," and "contrary to [p]laintiff's argument, the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 12-13, 16-17 (internal quotation marks and citation omitted).

### B. Mental RFC Determination

On July 30, 2020, plaintiff underwent a consultative psychiatric evaluation with Corey Anne Grassl, Psy.D. See T. at 518-21. Following the evaluation, Dr. Grassl issued a report including a summary of plaintiff's background information; current functioning; psychiatric, medical, drug and alcohol, legal, family, and military histories; mental status; appearance; speech; thought processes; affect; mood; sensorium; orientation; attention and concentration; memory skills; cognitive functioning; insight; judgment; consistency; and mode of living. See id. at 518-20. Dr. Grassl diagnosed plaintiff with major depressive disorder, recurrent episodes, moderate; generalized anxiety disorder; and panic disorder. See id. at 520-21. Dr. Grassl opined that there is

> [n]o evidence of limitation in [plaintiff's] ability to understand, remember, and apply simple directions and instructions; understand, remember, and apply complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers and the public; maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions. She is moderately limited in her ability to sustain concentration and perform tasks at a consistent pace, sustain an ordinary routine and regular attendance at work; and regulate emotions, control behaviors, and maintain wellbeing.

Id. at 520.  Dr. Grassl concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself this does not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis."  Id.

The ALJ summarized Dr. Grassl's opinion in her decision, noting that

> [f]ollowing an examination, Dr. Grassl opined that [plaintiff] had no evidence of limitation in her ability to understand, remember, and apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions.  Dr. Grassl further opined that [plaintiff] was moderately limited in her ability to sustain concentration and perform tasks at a consistent pace; sustain an ordinary routine and regular attendance at work; regulate emotions; control behaviors; and maintain well-being.

T. at 26.  The ALJ found that "[t]he findings from the examination of [plaintiff] generally support the opinion and the opinion is generally consistent with the overall record"; "[f]or example, the moderate limitation in concentrating is supported by [plaintiff's] continued appearance of being sad and anxiety and the November 3, 2020 report of decreased concentration."  Id.  The ALJ concluded that Dr. Grassl's opinion was "generally persuasive."  Id.  Following her assessment of Dr. Grassl's opinion, and in crafting the RFC, ALJ Hoffman noted that,

> [i]n light of the evidence and opinions regarding her mental functioning, I have limited [plaintiff] to simple tasks.  This addresses any issues with regard to concentrating and maintaining pace.  I have further limited the exposure to work-related stress by limiting [plaintiff] to performing simple work-related tasks that require only occasional decision making about the performance of those tasks with consistent job duties where she is not responsible for supervising nor managing the work of others.

Id. at 27.

Plaintiff argues that "the ALJ's RFC is unsupported by substantial evidence because the ALJ, without explanation, failed to incorporate the moderate limitations assessed by Dr. Grassl." Dkt. No. 12 at 10. Plaintiff acknowledges that the ALJ found Dr. Grassl's opinion to be "generally persuasive." Id. at 11 (citing T. at 26). Plaintiff contends that "despite accepting these moderate limitations, the ALJ failed to incorporate critical components of Dr. Grassl's opinion, or alternatively failed to explain why such limitations were implicitly rejected"; "notably, the ALJ failed to incorporate any limitation relating to 'sustaining an ordinary routine and regular attendance at work.'" Id. at 12 (citation omitted).

The RFC is "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). "RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms." Malcolm M. v. Comm'r of Soc. Sec., No. 1:17-CV-0986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (citing Martone, 70 F. Supp. 2d at 150, and 20 C.F.R. §§ 404.1545, 416.945). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." Curry v. Comm'r of Soc. Sec., 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2)). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150 (citations omitted).

In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided

by any medical sources.  See 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c).  "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]"  Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted).  "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question"; "rather, [the Court] must decide whether substantial evidence supports the ALJ's decision."  Elizabeth P. v. Comm'r of Soc. Sec., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022) (internal quotation marks and citation omitted)).  The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence," but "[t]he Court will not reweigh the evidence that was before the ALJ."  April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted).

Here, Dr. Grassl opined that plaintiff "is moderately limited in her ability to sustain concentration and perform tasks at a consistent pace, sustain an ordinary routine and regular attendance at work; and regulate emotions, control behaviors, and maintain wellbeing."  T. at 520.  Plaintiff argues that the ALJ failed to incorporate these moderate limitations into her RFC determination.  See Dkt. No. 12 at 10.  However, the Second

Circuit has repeatedly held that "'moderate' limitations do not preclude an individual's ability to work." Franklin v. Colvin, No. 16-CV-06478 (ALC), 2018 WL 1449524, at *7 (S.D.N.Y. Mar. 23, 2018) (citing McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) (finding no error where the ALJ found the plaintiff was capable of work despite "moderate difficulties" in social functioning and concentration, persistence or pace)); see, e.g., Mayer v. Comm'r of Soc. Sec., No. 1:18-CV-0062 (WBC), 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (citing McIntyre, 758 F.3d at 149; Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (holding that "the ALJ's determination that [the p]etitioner could perform her previous unskilled work was well supported" where the petitioner had nothing "more than moderate limitations in her work-related functioning"); and Matta, 508 F. App'x at 55 (affirming decision where "[t]he ALJ found that [the] plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.")) (additional citations omitted).

As relevant here, "[t]here is significant case law within the Second Circuit finding that providing RFC limitations such as 'simple, repetitive instructions' and limiting the amount of . . . changes in the work setting account for a claimant's moderate limitations in maintaining a schedule." Michael C. v. Berryhill, No. 17-CV-1395 (DJS), 2019 WL 1228553, at *5-6, (N.D.N.Y. Mar. 15, 2019) (citing Shannon v. Berryhill, No. 6:16-CV-06796 (MAT), 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018); Lowry v. Comm'r of

Soc. Sec., No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *5 (N.D.N.Y. Mar. 16, 2017), report and recommendation adopted, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017); and Landers v. Colvin, No. 14-CV-1090S, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that [the p]laintiff is limited to 'simple, repetitive, and routine tasks' accounts for [the p]laintiff's limitations as to maintaining . . . regular attendance")). Thus, contrary to plaintiff's arguments, the ALJ properly incorporated plaintiff's moderate limitations related to sustaining an ordinary routine and regular attendance at work by limiting plaintiff to "simple instructions and directions," "simple tasks," and "simple, repetitive work-related stress."  T. at 20; see, e.g., Jennifer M. v. Comm'r of Soc. Sec., No. 1:21-CV-980 (GTS/ATB), 2022 WL 19003388, at *7 (N.D.N.Y. Nov. 18, 2022) ("The ALJ accounted for functional limitations associated with moderate difficulties with concentration, pace, social interaction, and maintaining a regular schedule by limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions."), report and recommendation adopted, 2023 WL 2236607 (N.D.N.Y. Feb. 27, 2023); see also Janet L.K. v. Saul, No. 1:20-CV-0725 (GTS), 2021 WL 2592899, at *5 (N.D.N.Y. June 24, 2021) (noting that an RFC for simple, repetitive, low stress work with no more than occasional interaction with supervisors incorporated mild-to-moderate limitations in sustaining an ordinary routine); Michael C., 2019 WL 1228553, at *5-6 (holding that the ALJ properly accounted for the claimant's moderate limitations in maintaining a regular schedule by "providing RFC limitations such as 'simple, repetitive instructions' and limiting the amount of judgment and changes in the work setting").

Similarly, the ALJ properly accounted for plaintiff's moderate limitations related to sustaining concentration and performing tasks at a consistent pace by limiting her to "simple instructions," "simple tasks," and "simple, repetitive work-related stress in that [she] can make occasional decisions directly related to the performance of simple tasks[.]"  T. at 20; see, e.g., Valdes-Ocasio v. Kijakazi, No. 21-3152, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (summary order) (rejecting the plaintiff's claim that her moderate limitations in concentration and attendance-related areas required more detailed limitations in the ALJ's RFC, where the RFC already limited the plaintiff to understanding, remembering, and carrying out simple instructions, involving routine and repetitive tasks); Benjamin C. v. Comm'r of Soc. Sec., No. 5:21-CV-872 (ATB), 2022 WL 16571699, at *10 (N.D.N.Y. Nov. 1, 2022) ("By limiting [the] plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions, the ALJ accounted for the functional limitations associated with [the] plaintiff's difficulties with concentration, pace, and social interaction.") (citations omitted).

The ALJ also accounted for plaintiff's moderate limitations related to regulating emotions, controlling behaviors, and maintaining wellbeing by limiting her ability to "relate to and interact appropriately with all others to the extent necessary to carry out simple tasks" and to work "in a position with consistent job duties that do not require [her] to supervise nor manage the work of others."  T. at 20; see Allisa P. v. Comm'r of Soc. Sec., No. 1:21-CV-556 (DB), 2024 WL 278227, at *10 (W.D.N.Y. Jan. 25, 2024) ("Dr. Farmer's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being is consistent with the ALJ's RFC finding for simple, unskilled, work involving limited social interaction"); see also Barksdale v. Saul, No.

6:18-CV-6239, 2019 WL 3842358, *3-4 (W.D.N.Y. Aug. 15, 2019) (rejecting the plaintiff's argument that the ALJ "ignored" an opinion assessing moderate limitations in regulating emotions, controlling behavior, and maintaining well-being, and finding such an opinion was not inconsistent with the RFC for simple work with only occasional interaction with others).

Thus, even though Dr. Grassl opined moderate limitations with respect to plaintiff maintaining a routine, sustaining concentration, and regulating emotions, the ALJ's RFC determination appropriately incorporated[5] such limitations. See Coleman v. Comm'r of Soc. Sec., 335 F. Supp. 3d 389, 401 (W.D.N.Y. 2018) (finding that the ALJ's RFC limiting the plaintiff to simple, routine work was fully consistent with moderate limitations in concentration, persistence, and pace); see also Daniel J. v. Kijakazi, 3:21-CV-1121 (ATB), 2022 WL 17177619, at *11 (N.D.N.Y. Nov. 23, 2022) (explaining that an RFC determination for "simple" work requiring only simple tasks and instructions was consistent with opinions finding moderate limitations in the claimant's ability to sustain a routine and concentration). Accordingly, the ALJ did not err in forming her mental RFC

---

[5] As plaintiff notes, "[i]t is not proper for a court to speculate that an ALJ 'implicitly incorporated' limitations identified by a doctor into an RFC assessment"; "instead, 'it is incumbent upon the ALJ to provide a detailed rationale for either rejecting the limitations or deeming them accommodated by the limitations stated as part of the RFC assessment.'" Dkt. No. 12 at 14 (quoting Long v. Berryhill, No. 18-CV-1146 (PKC), 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019)). However, contrary to plaintiff's contentions, the ALJ did not "implicitly reject[ ]" Dr. Grassl's opined limitations. Id. at 12. Instead, the ALJ expressly considered the limitations and incorporated them into her RFC determination as discussed above. See T. at 20; see also T. at 26-27 ("In light of the evidence and opinions regarding her mental functioning, I have limited [plaintiff] to simple tasks."). To that extent, although plaintiff argues that McIntyre v. Colvin and Stellmaszyk v. Berryhill are "instructive," her contention is misguided. Dkt. No. 12 at 13-14 (citing McIntyre v. Colvin, 758 F.3d 146 (2d Cir. 2014), and Stellmaszyk v. Berryhill, No. 16-CV-09609 (DF), 2018 WL 4997515, at *26 (S.D.N.Y. Sept. 28, 2018)). Both McIntyre and Stellmaszyk address an ALJ's failure to incorporate moderate limitations in maintaining concentration, persistence, and pace. See McIntyre, 758 F.3d at 152 (defining the circumstances of when an ALJ's failure to explicitly incorporate nonexertional limitations is considered to be harmless error); see also Stellmaszyk, 2018 WL 4997515, at *28 (On this point, nothing in the opinions of the medical professionals (as discussed above) or in the ALJ's decision itself illuminates how the RFC determination sufficiently account[ed] for the identified moderate limitations.") (internal quotation marks omitted).

determination.  See Koza v. Comm'r of Soc. Sec., 692 F. Supp. 3d 197, 204-05 (S.D.N.Y. 2023) (concluding that the ALJ properly accounted for the plaintiff's moderate limitations in regulating emotions, controlling behavior, and maintaining wellbeing, by providing in the RFC that the plaintiff should only have occasional contact with others); see also Martinez v. Comm'r of Soc. Sec., No. 3:16-CV-0908 (WBC), 2017 WL 2633532, at *5-7 (N.D.N.Y. June 15, 2017) (explaining that the ALJ's determination that the plaintiff "had the mental RFC engage in simple, routine, and repetitive tasks in a low-stress job, defined as a job that had occasional changes in the work setting that required occasional decision making and occasional judgment . . . is not inconsistent with moderate limitation in mental functioning"); see Lowry, 2017 WL 1290685, at *5 ("[T]he ALJ did not, as [the p]laintiff contends, fail to provide a rationale as to why Dr. Brand's 'moderate' limitation in maintaining a schedule was not included in the RFC.  As outlined herein, the ALJ's RFC limited [the p]laintiff to simple, routine tasks, which accounted for a possible "moderate" limitation in maintaining a routine."), report and recommendation adopted, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017).

Further, in challenging the ALJ's mental RFC determination, "[p]laintiff omits that Dr. Grassl's opinion was not the only evidence relied on by the ALJ."  Dkt. No. 18 at 14. In reaching her mental RFC determination, ALJ Hoffman also considered medical opinions from state agency psychological consultants T. Bruni, Ph.D. and M. Momot-Baker, Ph.D.  See T. at 26.  On September 23, 2020, Dr. Bruni reviewed plaintiff's records.  See id. at 100-02.  Dr. Bruni assessed plaintiff to have, inter alia, moderate limitations in her ability to carry out detailed instructions; moderate limitations in her ability to maintain attention and concentration for extended periods; moderate limitations

in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods.  See id. at 100-01.  However, Dr. Bruni concluded that plaintiff "is able to understand and remember instructions and procedures"; "can maintain adequate attention and concentration to complete work like procedures and can sustain a routine"; she "is able to relate and respond in an appropriate manner"; and she "exhibits some difficulty with adaptation but is able to cope with changes and make work-related decisions."  Id. at 102.

Upon reconsideration, on March 19, 2021, Dr. Momot-Baker also reviewed plaintiff's records.  See T. at 120-24.  Dr. Momot-Baker's findings were similar to Dr. Bruni's, determining that plaintiff had moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  See id. at 121.  Dr. Momot-Baker had the same conclusions as Dr. Bruni, specifically that plaintiff "is able to understand and remember instructions and procedures"; "can maintain adequate attention and concentration to complete work like procedures and can sustain a routine"; she "is able to relate and respond in an appropriate manner"; and she "exhibits some difficulty with adaptation but is able to cope with changes and make work-related decisions."  Id. at 124.

The ALJ explained that both Dr. Bruni and Dr. Momot-Baker opined that plaintiff's "severe mental health impairments caused no more than moderate limitation," and they

"found that [plaintiff] could understand and remember instructions and procedures; could maintain adequate attention and concentration to complete work like procedures and sustain a routine; could relate and respond to others in an appropriate manner; and could cope with changes and make work-relate decisions." T. at 26. The ALJ noted that, "[a]lthough the [s]tate agency psychological consultants did not examine [plaintiff], they have a understanding of the disability program's policies and evidentiary requirements," and were "able to review the available record knowing that the purpose of the review was to issue a medical opinion pertaining to disability using the agency's requirements." Id. The ALJ concluded that "[t]he opinion rendered by Dr. Momot-Baker with regard to the B criteria is more persuasive as Dr. Momot-Baker had the opportunity to review more evidence at the reconsideration level and the assessments are generally consistent with and supported by the overall evidence." Id.

Plaintiff does not challenge the ALJ's evaluation of either Dr. Bruni's or Dr. Momot-Baker's assessments, which are consistent with the ALJ's RFC determination. Compare T. at 102, 124 (opining that plaintiff "can maintain adequate attention and concentration to complete work like procedures and can sustain a routine."), with T. at 20 (noting plaintiff retains the ability to "maintain attention/concentration for simple tasks" and "regularly attend to a routine and maintain a schedule"); see generally Dkt. No. 12. In fact, plaintiff does not acknowledge Dr. Bruni's opinion or Dr. Momot-Baker's opinion at all. See generally Dkt. No. 12.

The ALJ "did not formulate the [mental] RFC based on her own lay interpretation of bare medical evidence," but instead relied upon the medical opinions from Dr. Grassl,

Dr. Bruni, and Dr. Momot-Baker.[6]  Weiss v. Comm'r of Soc. Sec., No. 1:19-CV-0705 (WBC), 2020 WL 6135860, at *5 (W.D.N.Y. Oct. 19, 2020) ("[A]lthough the ALJ's RFC determination did not mirror a specific medical opinion, the ALJ did not formulate the RFC based on her own lay interpretation of bare medical evidence.  The ALJ relied on the only medical opinion in the record[and, t]herefore, the ALJ properly assessed [the p]laintiff's RFC and her determination was supported by substantial evidence in the record.").  Given these medical opinions, "the ALJ reasonably found that [p]laintiff's impairments, while limiting, were not so restrictive as to preclude a range of simple, work which involved only simple, repetitive work-related stress."  Dkt. No. 18 at 9; see Kathy C. v. Berryhill, No. 5:18-CV-00088 (CFH), 2019 WL 1060646, at *9 (N.D.N.Y. Mar. 6, 2019) ("It is clear from the ALJ's overall decision that she appropriately considered the evidence before her, including the numerous opinions of record.  As such, . . . the Court therefore finds that the ALJ's RFC determination (including her analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence.").  Contrary to plaintiff's assertions, the ALJ did not "avoid conducting the 'detailed assessment' . . . 'by merely indicating that [plaintiff] can

---

[6] To the extent plaintiff argues that the ALJ's RFC did not mirror Dr. Grassl's opinion, this was not required.  See Lara M. v. Comm'r of Soc. Sec., No. 5:22-CV-01407 (AMN/ML), 2023 WL 10365082, at *11 (N.D.N.Y. Dec. 20, 2023) ("Although the final RFC determination did not mirror any particular opinion, it was not required to do so.") (citation omitted), report and recommendation adopted sub nom. Lara J. M. v. O'Malley, 2024 WL 862196 (N.D.N.Y. Feb. 29, 2024); see also Andrew S. v. Comm'r of Soc. Sec., No. 1:20-CV-1612 (DB), 2022 WL 17669889, at *8 (W.D.N.Y. Dec. 14, 2022) ("[T]he ALJ was not required to adopt Dr. Fabiano's opinion wholesale, as [the p]laintiff appears to argue.  Nor is the ALJ required to rely on an opinion that mirrored the RFC.  As explained above, RFC is an administrative finding, not a medical one.  Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole.").  It is well-settled that an "ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022) (citing Richardson, 402 U.S. at 399); see, e.g., Matta, 508 F. App'x at 56 (stating that an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole").

perform simple, unskilled work.'"  Dkt. No. 12 at 16 (quoting SSR 96-8p, 1996 WL
374184, at *4 (July 2, 1996), and Karabinas v. Colvin, 16 F. Supp. 3d 206, 215
(W.D.N.Y. 2014)) (additional citations omitted).  Instead, the ALJ "identified and
evaluated specific evidence in the record relevant to [p]laintiff's mental functioning," and
concluded that plaintiff has the RFC to, inter alia, "perform simple tasks"; "attend to a
routine and maintain a schedule"; and "handle simple, repetitive work-related stress."
Julie P. v. Comm'r of Soc. Sec., No. 22-CV-6222 (FPG), 2023 WL 5806237, at *6
(W.D.N.Y. Sept. 7, 2023) ("Plaintiff's contention that the ALJ failed to undertake the
requisite detailed assessment is belied by the record, which demonstrates that the ALJ
identified and evaluated specific evidence in the record relevant to [the p]laintiff's mental
functioning."); T. at 20.

        Accordingly, "the ALJ properly assessed [p]laintiff's [mental] RFC and her
determination was supported by substantial evidence in the record."  Weiss, 2020 WL
6135860, at *5; see Snyder v. Saul, 840 F. App'x 641, 643 (2d Cir. 2021) (summary
order) ("The ALJ was entitled to weigh all of the evidence and make an RFC finding that
corresponds with the record as a whole."); see also Snell v. Apfel, 177 F.3d 128, 133
(2d Cir. 1999) (explaining that, when making a finding as to disability, an ALJ properly
"considers the data that physicians provide but draws [her] own conclusions").

### C. Medical-Vocational Guidelines

        At step five, the ALJ determined that "there are jobs that exist in significant
numbers in the national economy that [plaintiff] can perform" and, therefore, plaintiff
"has not been under a disability, as defined in the Social Security Act, from June 15,
2018, through the date of this decision."  T. at 28-29.  To make this finding, the ALJ

considered plaintiff's "age, education, work experience, and residual functional capacity." Id. at 28. The ALJ further noted that plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations"; "[h]owever, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." Id. The ALJ, therefore, determined that these factors corresponded to section 204.00 of the Medical-Vocational Guidelines and concluded that a finding of not disabled is appropriate under such framework. See id.

Plaintiff argues that "the ALJ's application of the Medical-Vocational Guidelines in this matter was improper because the ALJ ignored evidence of a significant nonexertional impairment affecting [her] ability to maintain concentration persistence and pace and maintain regular attendance." Dkt. No. 12 at 19. Specifically, plaintiff contends that the ALJ ignored Dr. Grassl's assessment of [her] moderate limitations, as well as other health records indicating that plaintiff suffers from severe depression and anxiety. See id. at 19-20 (citing T. at 518-21, 929, 933). Plaintiff asserts that, "in light of [her] evidence of significant nonexertional impairment, the ALJ erred by failing to obtain vocational expert testimony." Id. at 20.

"The medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, [Appendix] 2, commonly called 'the Grid,' codify considerations of a claimant's residual functional capacity, age, education and work experience to determine if he [or she] is disabled." Crean v. Sullivan, No. 91-CV-7038 (PKL), 1992 WL 183421, at *4 (S.D.N.Y. July 22, 1992). "Generally the result listed in the Grid is dispositive on the issue of disability." Gray v. Chater, 903 F. Supp. 293, 298 (N.D.N.Y. 1995) (citation omitted). "However, exclusive use of the Grid to determine disability may be inappropriate where

the medical-vocational guidelines fail [to] accurately to describe a claimant's particular limitations." Crean, 1992 WL 183421, at *4 (citations omitted). Additionally, "sole reliance on the Grid may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (citations omitted); see Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986) (barring the application of the Medical-Vocational Guidelines where "the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment"). "In these circumstances, the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp, 802 F.2d at 603). "An ALJ's determination of whether a claimant's nonexertional limitations significantly impact his ability to perform work constitutes a finding of fact, subject to deferential review." Shawn C. v. Comm'r of Soc. Sec., No. 20-CV-1378, 2022 WL 17037624, at *5 (W.D.N.Y. Nov. 17, 2022) (citing Jordan v. Comm'r of Soc. Sec., 194 F. App'x 59, 61 (2d Cir. 2006) (summary order)).

Here, in foregoing the testimony of a vocational expert and relying solely on the Medical-Vocational Guidelines, ALJ Hoffman cited to Social Security Ruling ("SSR") 85-15. See T. at 28. SSR 85-15 provides, in pertinent part, that so long as an individual can perform "[t]he basic mental demands of competitive, remunerative, unskilled work," the individual may be found to be "not disabled." SSR 85-15, 1985 WL 56857, at *4-5 (Jan. 1, 1985). "The basic mental demands of . . . unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to

respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  Id. at *4; see T. at 28.  Such abilities are analogous to ALJ Hoffman's RFC determination that plaintiff could perform "simple work-related tasks that require only occasional decision making about the performance of those tasks with consistent job duties."  T. at 27.  As discussed above, the ALJ's RFC determination is supported by substantial evidence.  See discussion supra Subsection IV.B.

ALJ Hoffman found "that the evidence establishe[d] that [plaintiff] has no significant limitations in the performance of the[ ] basic mental demands of work."  T. at 28-29.  In making this finding, contrary to plaintiff's contentions, the ALJ did not ignore Dr. Grassl's assessment of plaintiff's impairments.  See id. at 20, 26-27; see also Dkt. No. 12 at 19-20.  Instead, the ALJ expressly considered Dr. Grassl's opinion and incorporated it into her assessment of plaintiff's nonexertional limitations.  See T. at 26-29; see also Bridget S. v. Kijakazi, No. 6:20-CV-1440 (ATB), 2022 WL 2046364, at *12-13 (N.D.N.Y. June 7, 2022) (concluding that "the ALJ was justified in using the Grid as a framework," instead of obtaining testimony from a vocational expert, where the "plaintiff's nonexertional impairments did not significantly erode the available occupational base for unskilled light work," given that the plaintiff was "capable of working in [an environment] that involves occasional decision-making, occasional changes in the work setting, and occasional use of judgment") (internal quotation marks omitted).

Plaintiff also appears to argue that "the ALJ ignored evidence" of October 2020 medical records that are "indicative of severe depression" and "severe anxiety" which

constitutes "a significant nonexertional impairment affecting [her] ability to maintain concentration persistence and pace and maintain regular attendance."  See Dkt. No. 12 at 19-20 (citing T. at 929, 933).  However, the ALJ acknowledged plaintiff's depression and anxiety throughout her decision, but ultimately concluded that plaintiff failed to demonstrate any "significant limitation in the performance of the[ ] basic mental demands of work."  T. at 19, 22-24, 28; see Fisk v. Colvin, No. 14-CV-931S, 2017 WL 1159730, at *7 (W.D.N.Y. Mar. 29, 2017) (upholding the ALJ's reliance on the Medical-Vocational Guidelines where the ALJ found that the claimant had the RFC for work at all exertional levels with a limitation to jobs involving simple, routine, repetitive type tasks involving only occasional contact with others because it had "little or no effect" on the plaintiff's ability to perform unskilled work).

Plaintiff has failed to establish that "the ALJ ignored evidence of a significant nonexertional impairment."  Dkt. No. 12 at 19; see Woodmancy v. Colvin, 577 F. App'x 72, 76 (2d Cir. 2014) (summary order) ("[C]ontrary [to the claimant's arguments], the ALJ found that although [the claimant] suffered from depression, she 'retain[ed] the ability (on a sustained basis) to understand, carry out, and remember simple instructions . . . and to deal with changes in a routine work setting.'  This determination was supported by substantial evidence in the record[.]  Accordingly, because there is substantial evidence that [the claimant's] nonexertional impairments did not 'significantly limit the range of work permitted by [her] exertional limitations,' the ALJ was not required to consult a vocational expert.").  As such, the ALJ reasonably found that plaintiff's nonexertional impairments did not significantly impact the full range of unskilled work at all exertional levels.  See Zabala, 595 F.3d at 410-11 ("The ALJ found

that [the claimant's] mental condition did not limit her ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision[, despite medical opinions finding moderate medical limitations].  Thus, her nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the Medical-Vocational Guidelines was permissible."); see also Lebron v. Colvin, No. 14-CV-5921 (CS/LMS), 2018 WL 3471815, at *1-3 (S.D.N.Y. July 18, 2018) (upholding the ALJ's use of the Medical-Vocational Guidelines, notwithstanding the plaintiff's "mental/cognitive limitations," when the plaintiff's limitations had little or no effect on the occupational base of unskilled work); Crothers v. Colvin, No. 13-CV-4060 (VEC/KNF), 2015 WL 437403, at *10 (S.D.N.Y. Feb. 3, 2015) (finding that the ALJ did not commit legal error by failing to use a vocational expert because "he determined that [the plaintiff's] non-exertional impairments do not significantly diminish [the plaintiff's] ability to work"), report and recommendation adopted, 2015 WL 1190167 (S.D.N.Y. Mar. 16, 2015).

The undersigned notes that "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  Roma v. Astrue, 468 F. App'x 16, 21 (2d Cir. 2012) (summary order).  Indeed, many courts have found that limitations, similar to those assessed here by ALJ Hoffman, do not significantly impact the occupational base of unskilled work and, thus, do not necessitate vocational expert testimony.  See, e.g., Sipe v. Astrue, 873 F. Supp. 2d 471, 479-80 (N.D.N.Y. July 3, 2012) (determining that vocational expert testimony was not required where the claimant could perform simple work, but "cannot interact appropriately with the general public"); Bridget S., 2022 WL

2046364, at *13 (finding that nonexertional limitations, including a limitation to low-stress work and occasional decision-making, occasional changes in the work setting, and occasional use of judgment, did not significantly erode the base of unskilled work); Rodriguez v. Colvin, 13-CV-915 (FJS), 2016 WL 1337345, at *6-7 (N.D.N.Y. Apr. 5, 2016) (concluding that vocational expert testimony was not required where the plaintiff had several nonexertional restrictions, including that he was limited to understanding and remembering very short and simple instructions, having no more than occasional contact with others, and being in a low-stress environment).

Given the foregoing, the ALJ did not err by determining that plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels," and concluding that a "finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines."  T. at 28; see Bridget S., 2022 WL 2046364, at *13 ("Because plaintiff's nonexertional impairments did not 'significantly erode the available occupational base for unskilled light work,' the ALJ was justified in using the Grid as a framework, and the appropriate SSRs to determine that plaintiff was not disabled."); see also Young v. Berryhill, No. 3:17-CV-00970 (SALM), 2018 WL 2947860, at *16 (D. Conn. June 12, 2018) (finding that "the ALJ appropriately relied on the Grids to determine that [the] plaintiff can perform a significant number of jobs in the national economy," where the plaintiff did not establish that she had any "impairments that significantly limit her ability to perform unskilled work"); Pritchard v. Colvin, No. 1:13-CV-945 (DNH/CFH), 2014 WL 3534987, at *10 (N.D.N.Y. July 17, 2014) (finding "the ALJ was permitted to rely on the Grids" where the plaintiff failed to "cite to any [evidence] that indicates that [the]

plaintiff's non-exertional impairments significantly impact[ ] her ability to perform work-related functions[ ]").

It is, therefore, recommended that plaintiff's motion be denied, and the Commissioner's decision be affirmed.

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that plaintiff's motion (Dkt. No. 12) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's motion (Dkt. No. 18) be **GRANTED**; and it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Date:   August 12, 2024
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge